*Eileen Joseph and Daniel Wishnatsky and Randall Brooks v. The Bureau of National Affairs, Inc., et al.*
**United States District Court**
**For the Eastern District of Virginia**
**Civil Action No.:  1:13-cv-1056 (LO / JFA)**

# EXHIBIT 1

## Settlement Agreement

# Memorandum in Support of Class Counsel's Motion for Final Approval

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### ALEXANDRIA DIVISION

|  |  |
|---|---|
| EILEEN JOSEPH AND<br>DANIEL WISHNATSKY, Individually and on<br>behalf of others similarly situated,<br><br>and<br><br>RANDALL BROOKS, as a member of the class,<br><br>Plaintiffs,<br><br>v.<br><br>THE BUREAU OF NATIONAL AFFAIRS, INC.,<br>*et al.*,<br><br>Defendants. | Case No. 1:13-CV-1056 (LO/JFA) |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement ("Agreement") is entered into among Eileen Joseph, Daniel Wishnatsky, and Randall Brooks (collectively "Named Plaintiffs"), on behalf of the Settlement Class, and defendant The Bureau of National Affairs, Inc. ("BNA") and defendants Paul A. Blakely, Elizabeth Wildhack, as Executor for Estate of Cynthia J. Bolbach, Gerald Hobbs, Marcia P. Kaplan, George J. Korphage, Eunice F. Lin, Gregory C. McCaffery, Darren P. McKewen, Jonathan Newcomb, Ellen Taus, Daniel Toohey, David M. Victor, Neil Froemming, Robert Ambrosini, and Paul N. Wojcik (collectively "Individual Defendants")(collectively with BNA "Defendants"), by and through their respective counsel.

WHEREAS:

A.      On August 23, 2013 Named Plaintiffs filed the Class Action Complaint ("Complaint") referenced in the caption above, alleging violations of federal securities law by Defendants in connection with the valuation of BNA stock and the purchase and sale of BNA stock under the BNA Stock Purchase and Transfer Plan from March 21, 2011, through August 25, 2011;

B.      In a prior lawsuit, *Knight v. Lavine*, 1:12-cv-611(E.D. Va.) (LO/JFA) ("*Knight*") Plaintiffs' Counsel litigated a case brought under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), against all of the Individual Defendants except Individual Defendant Robert Ambrosini.  *Knight* alleged ERISA violations in connection with the

- 1 -

valuation of BNA stock and the purchase and sale of BNA stock in the BNA 401(k) Plan during the time period from March 10, 2011 through August 25, 2011. Because the underlying facts in *Knight* and this case are similar, the discovery in *Knight* provided Plaintiffs' Counsel with significant information pertinent to the securities law claims in this case. Defendants in *Knight* produced and made available to Plaintiffs' Counsel approximately 242,000 pages of documents, and the total document production by parties and non-parties in *Knight* exceeded 355,000 pages. Plaintiffs' Counsel reviewed and analyzed the documents produced in *Knight*, many of which would have been potentially subject to discovery in this case. The parties in *Knight* also conducted sixteen fact depositions, and exchanged detailed reports and rebuttal reports of five expert witnesses, many of which contained information pertinent to this case. Although the legal standards and burdens of proof differ in this Action brought under federal securities law from those in the *Knight* case brought under ERISA law, because of *Knight* the Parties and their counsel have had the benefit of extensive information and documents potentially relevant to the facts in this Action.

C.      The Parties desire to promptly and fully resolve and settle with finality all of the Released Claims asserted by Named Plaintiffs for themselves and on behalf of the Settlement Class on the terms set forth herein and subject to the approval of the Court.

D.      The Parties have engaged in arm's length negotiations to achieve a compromise and settlement of the Action, including participation in a lengthy mediation before Jed D. Melnick, Esq., a highly experienced mediator with JAMS/ADR. The Parties were able to reach the terms that underlie the Stipulation and Agreement of Settlement presented herein with the assistance of Mr. Melnick in the days following the mediation.

E.      This Agreement constitutes a compromise of matters that are in dispute between the Parties. Defendants enter into this Agreement solely to eliminate the uncertainty, burden and expense of further protracted litigation. Defendants have pending a fully briefed Motion to Dismiss the Action, which has not yet been argued to or ruled upon by the Court. Defendants deny all allegations of liability or wrongdoing or damage to the Settlement Class or Settlement Class Members and would assert complete defenses to the Complaint if this Settlement were not consummated. Defendants believe that they acted properly and lawfully at all times, and believe that all claims brought against them are without merit. This Agreement, any of its terms, and any proceedings related to it, are not intended to constitute, nor should they be construed as, an admission of liability or wrongdoing in any respect. Neither this Agreement, nor the fact of its execution, nor any of its provisions, shall be offered or received in evidence in any action or proceeding of any nature, or otherwise referred to or used in any manner in any court or other tribunal, except for purposes of seeking approval of the Court in this proceeding or an appeal of the Final Judgment, or in a proceeding to enforce the terms of this Agreement.

F.      Named Plaintiffs believe that the claims asserted in the Action have merit. However, Named Plaintiffs and Plaintiffs' Counsel recognize and acknowledge the expense and length of the proceedings necessary to prosecute the Action against Defendants through trial and appeals. Named Plaintiffs and Plaintiffs' Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as this Action, including potential problems of proof and the defenses that would be asserted to the violations asserted in the Action. They believe that the terms of the Settlement set forth in this Agreement confer

substantial benefits upon the Settlement Class, are fair, reasonable and adequate, and that the Settlement is in the best interests of Named Plaintiffs and the Settlement Class.

NOW, THEREFORE, the Parties, in consideration of the promises, covenants and agreements herein described, and for other good and valuable consideration, acknowledged by each of them to be satisfactory and adequate, and without any admission or concession as to any matter of fact or law, and intending to be legally bound, do hereby stipulate and agree as follows:

1.   **DEFINITIONS**

1.1   "Action" means the action captioned *Eileen Joseph, et al. v. The Bureau of National Affairs, et al.*, Case No.1:13-CV-1056 (LO/JFA), pending in the United States District Court for the Eastern District of Virginia, Alexandria Division.

1.2   "Attorneys' Fees and Expenses Award" means the amount awarded to Plaintiffs' Counsel to compensate them for their fees and expenses in connection with investigating, prosecuting and/or settling the Action.

1.3   "Authorized Claimant" means a Settlement Class member whose Proof of Claim is allowed pursuant to the terms of this Agreement.

1.4   "BNA Stock" means the common stock issued by BNA.

1.5   "CAFA Notices" means notices of the proposed Settlement to the appropriate federal and state officials as provided by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

1.6   "Claims" means any and all claims, demands, actions, causes of action, obligations, debts, judgments and liabilities of any kind, nature and description, whether at law or in equity or upon any legal or equitable theory, whether contractual, common law or statutory, whether arising under federal, state, common or foreign law, whether based on allegedly intentional, negligent or reckless conduct, whether asserted or unasserted as claims, cross-claims, counterclaims or third-party claims in any pleadings in this Court, in any federal or state court, or in any other court, arbitration proceeding, administrative agency or other forum in the United States or elsewhere, whether foreseen or unforeseen, whether matured or unmatured, whether known or unknown, whether accrued or not accrued, whether existing now or to be created in the future.

1.7   "Claims Administrator" means such entity that administers the Settlement in accordance with this Agreement.

1.8   "Class Period" means the period of time from March 21, 2011, through August 25, 2011, inclusive.

1.9   "Complaint" means the Class Action Complaint in the Action, filed on August 23, 2013.

1.10   "Court" means the United States District Court for the Eastern District of Virginia.

1.11   "Effective Date" means the date when all of the following shall have occurred: (1) the Preliminary Approval Order is entered by the Court; (2) the Notice is provided to the Settlement Class in a manner and form approved by the Court; (3) the Fairness Hearing is held and the Final Judgment is entered by the Court approving the Settlement; and (4) the Final Judgment is finally affirmed on appeal and/or is no longer subject to appeal or certiorari, and the time for any petition for reargument, appeal, or review, by certiorari or otherwise, has expired under the Federal Rules of Civil and/or Appellate Procedure.

1.12   "Escrow Account" means a segregated interest-bearing escrow account established by Plaintiffs' Counsel.   The Escrow Account shall be maintained as a Qualified Settlement Fund, as defined in Section 2.3 below.

1.13   "Escrow Agent" means the financial institution designated by Plaintiffs' Counsel to receive, hold, invest and disburse the Escrow Account pursuant to the terms of this Agreement.

1.14   "Execution Date" means the date on which this Agreement is filed with the Court.

1.15   "Fairness Hearing" means the hearing to be held by the Court to make a final decision pursuant to Rule 23 of the Federal Rules of Civil Procedure as to whether this Agreement is fair, reasonable and adequate.

1.16   "Final Approval Date" means the date on which the Final Judgment (as defined below) is entered by the Court.

1.17   "Final Judgment" means the order and the judgment to be entered by the Court substantially in the form attached as Exhibit D to this Agreement dismissing the Action on the merits and with prejudice.

1.18   "Immediate Family Members" shall mean the parents, children, step children, siblings, spouses and former spouses of any of the Individual Defendants.

1.19   "Internet Notice" shall mean publication of the Agreement and the Notice to Settlement Class Members on the following website to be established by Plaintiffs' Counsel: securitiesclassaction.dinsmore.com

1.20   "*Knight*" shall mean *Knight v. Lavine*, 1:12-cv-611(LO/JFA), brought in the United States District Court for the Eastern District of Virginia, Alexandria Division.

1.21   "Net Proceeds" means the Settlement Amount as defined in Section 2.2.1, plus all interest or other income earned thereon, less any Notice and Administrative Expenses, Tax Expenses, less court-approved Attorneys' Fees and Expenses Award, less court-approved Case Contribution Awards and reimbursement of expenses to Named Plaintiffs, and less any other payment authorized by the Court to be paid from the Settlement Amount.

1.22    "Notice" means the Notice of Settlement of Class Action which is to be provided to the Settlement Class substantially in the form attached hereto as Exhibit B as specified in Article 5 below.

1.23    "Notice and Administrative Expenses" means all expenses incurred by the Claims Administrator in connection with the preparation, printing and mailing of the Notice to the Settlement Class and publication of the Summary Notice, including without limitation locating Settlement Class Members, soliciting claims, assisting with the filing of claims, administering and distributing the Net Proceeds to the Settlement Class, processing proofs of claim, processing requests for exclusion, filing tax returns, escrow fees, and costs.

1.24    "Parties" means Named Plaintiffs and Defendants, collectively.

1.25    "Person" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, or any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives and assignees.

1.26    "Plaintiffs' Counsel" means the law firm of Dinsmore & Shohl LLP.

1.27    "Plan of Allocation" means the terms and procedures for allocating the Net Proceeds among, and distributing the Net Proceeds to, Settlement Class Members, as proposed in the Notice, or such other plan of allocation as the Court shall approve.

1.28    "Preliminary Approval Order" means the Order, substantially in the form attached as Exhibit C to this Agreement, by which the Court preliminarily approves this Agreement and directs the Notice to be provided to the Settlement Class.

1.29    "Preliminary Approval Order Date" means the date on which the Preliminary Approval Order is issued by the Court.

1.30    "Proof of Claim" means the form which is to be sent to Settlement Class Members substantially in the form attached hereto as Exhibit A.

1.31    "Defendants' Released Claims" means any claims which Defendants ever had, now have or hereafter can, shall, or may have against any of the Released Plaintiff Parties, which arise out of or relate in any way to the institution, prosecution, or settlement of this Action other than claims to enforce the Settlement.   For the avoidance of doubt, Defendants acknowledge that Defendants' Released Claims includes, but is not limited to, any claim that could be brought against the Released Plaintiff Parties regarding the use of information designated as confidential in *Knight* as referenced in footnote 1 of the Memorandum in Support of Defendants' Motion to Dismiss Class Action Complaint filed in this Action at Docket Item No. 29.

1.32    "Released Claims" means and includes any and all Claims that Named Plaintiffs, the Settlement Class or Settlement Class Members, and/or each of their respective present, former and future estates, heirs, executors, trusts, trustees, attorneys, accountants, administrators,

- 5-

successors and assigns of each , and agents of each of them, ever had, now have or hereafter can, shall or may have against the Released Persons that: (a) are alleged in, arise out of, are in any way related to or connected with the allegations, transactions, facts, matters or occurrences that gave rise to the claims alleged in the Action and that are or could have been advanced in the Action; and/or (b) in any way arise out of, are based upon, relate to or concern the valuation of BNA stock or the purchase, acquisition, disposition or sale of, or other transaction in BNA stock, including without limitation, Claims that arise out of or relate to any disclosures, Securities and Exchange Commission filings, press releases, registration statements, offering memoranda or other statements by Defendants, and/or (c) Claims that would be barred by principles of res judicata and/or collateral estoppel had the claims that were asserted or that could have been asserted in the Action been fully litigated and resulted in a final judgment or order; and (c) Claims that pertain to the allocation of the Escrow Account and determination of the Net Proceeds pursuant to the Plan of Allocation and this Agreement.

1.33    "Released Persons" mean Defendants, and their current, former and future officers, directors, employees, agents, parents, subsidiaries, instrumentalities, branches, divisions, affiliates, partners, insurers heirs, executors, successors and assigns.

1.34    "Released Plaintiff Parties" means any and all of the Named Plaintiffs, the Settlement Class, Settlement Class Members and Plaintiffs' Counsel, and/or each of their respective divisions, agencies, instrumentalities, branches, subsidiaries, parent companies, affiliates, partners, associates, representatives, predecessors, successors, heirs, owners, assigns, executors and/or administrators.

1.35    "Settlement" means the settlement to be consummated under this Agreement pursuant to the Final Judgment.

1.36    "Settlement Class" means all Persons who sold BNA stock through the BNA Stock Purchase and Transfer Plan ("SPTP") during the Class Period and received $17.50 per share, excluding: (i) Defendants named in the Complaint; (ii) officers and directors of BNA during the Class Period; (iii) Immediate Family Members of any person described in (i) and (ii); (iii) any person who has by a general release of claims waived rights to bring a claim and/or recover losses against Defendants; and (iv) those Persons who make a request for exclusion from the Settlement Class in the manner and within the time period provided by Article 6 and/or by order of the Court and do not thereafter rescind such requests.

1.37    "Settlement Class Member" means a member of the Settlement Class.

1.38    "Summary Notice" means the form of notice to be published substantially in the form appended as Exhibit C.

1.39    "Tax Expenses" means (i) all taxes on the income earned in the Escrow Account, and (ii) any expenses incurred in connection with such taxes (including, without limitation, any expenses of tax attorneys and accountants).

- 6 -

2.    **STIPULATION OF SETTLEMENT CLASS, CONSIDERATION FOR SETTLEMENT, QUALIFIED SETTLEMENT FUND AND PROOF OF CLAIM**

   2.1    Submission of Settlement to Court for Approval

      2.1.1    Solely for purposes of the Settlement and this Agreement and for no other purpose, Defendants stipulate and agree to (a) certification of this Action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class; (b) appointment of Named Plaintiffs as class representatives; and (c) appointment of Dinsmore & Shohl LLP as Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.   Promptly upon execution of this Agreement Named Plaintiffs will: (a) move for entry of the Preliminary Approval Order which will certify this Action to proceed as a class action solely for purposes of the Settlement and for no other purpose; (b) apply to the Court for preliminary approval of the Settlement and for the scheduling of a fairness hearing for consideration of final approval of the Settlement; and (c) will apply for approval of the Plan of Allocation. The Parties and their counsel shall use their best efforts to obtain final Court approval of the Settlement.   Named Plaintiffs shall provide Defendants at least five (5) calendar days to review and comment on their motion for entry of the Preliminary Approval Order before filing. The Parties further agree that if the Settlement terminates or does not become final for any reason, Defendants will not be deemed to have consented to certification of any class, the agreements and stipulations in this Agreement concerning class definition, class period, and class certification shall not be used as evidence or argument to support class certification, class definition, any class period, or for any other purpose, and Defendants will retain all rights to oppose class certification, including certification of a class identical to that provided for in this Agreement.

   2.2    Settlement Amount and Payment

      2.2.1    In consideration of, and expressly in exchange for, all of the promises and agreements set forth in this Stipulation and Agreement of Settlement, the Settlement Amount shall be the sum of Four Million Two Hundred Fifty Thousand Dollars ($4,250,000.00) (the "Settlement Amount").

      2.2.2    The Settlement Amount shall constitute a non-recourse settlement amount, and, together with the payment specified in Section 2.2.4, shall be the full and sole monetary contribution made by or on behalf of Defendants in connection with the Settlement.   For the avoidance of doubt, in no circumstance shall Individual Defendants, or any of them, have any personal obligation to fund any or all of the Settlement Amount or the payment specified in Section 2.2.4, and no Defendants and/or their insurer shall have any obligation to provide funds for any purpose other than as specifically set forth in the Agreement.   The Settlement Amount specifically covers the payment of: (i) all claims of attorneys' fees and reimbursement of expenses by Plaintiffs' Counsel on behalf of Named Plaintiffs, the Settlement Class or any Settlement Class Member; (ii) all claims for case contribution awards and reimbursement of expenses to Named Plaintiffs; (iii) all compensation to Settlement Class Members under the court- approved Plan of Allocation; (iv) all Tax Expenses, and (v) all Notice and Administrative Expenses.

2.2.3   No later than ten (10) calendar days following the Preliminary Approval Order Date, Named Plaintiffs shall have established the Escrow Account.   The account name shall not include the initials BNA or the words "Bureau of National Affairs" or "Bloomberg." Upon establishment Plaintiffs' Counsel shall provide to counsel for BNA written notification of the date of establishment of the Escrow Account, the account name, address, ABA number, account number, taxpayer identification number and any additional information needed to deposit the Settlement Amount into the Escrow Account.

2.2.4   No later than twenty (20) calendar days after the Preliminary Approval Order Date, BNA shall deposit or cause others to deposit on Defendants' behalf (i) the Settlement Amount, and (ii) Twenty Thousand Dollars ($20,000.00),(representing the sole contribution by Defendants towards Plaintiffs' obligation to pay Notice and Administrative Expenses) with such payments made by wire transfer based on information provided by Plaintiffs' Counsel pursuant to Section 2.2.3.

2.2.5   If the Escrow Account has not been funded in accordance with Section 2.2.4 Named Plaintiffs may, within ten (10) calendar days thereafter, elect to terminate this Agreement and return the Parties to the positions they had as of the date immediately prior to the Execution Date.

2.3   Qualified Settlement Fund

2.3.1   The Parties agree that the Escrow Account is intended to be a single Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that the Claims Administrator shall be the "administrator" of the Escrow Account within the meaning of Treasury Regulation § 1.468B-2(k)(3) and shall be responsible for filing tax returns and all other documents required by the Internal Revenue Service or any state or local taxing authority in connection with the Escrow Account and for paying from the Escrow Account any Notice and Administrative Expenses and Tax Expenses with respect to the Escrow Account.

2.3.2   All Tax Expenses shall be paid out of the Escrow Account and shall be the responsibility of Named Plaintiffs; in all events the Released Persons shall not have any liability or responsibility for the Tax Expenses or the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority in connection with Tax Expenses.   Tax Expenses shall be treated as, and considered to be, a cost of administration of this Agreement and shall be paid out of the Escrow Account in a timely manner without prior order from the Court, and the Claims Administrator shall be obligated to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts; the Released Persons are not responsible and shall have no liability therefor or for any reporting requirements that may relate thereto.

2.3.3   All monies deposited in the Escrow Account shall be invested in in FDIC insured accounts or securities backed by the full faith and credit of the United States Government.

2.3.4   Plaintiffs' Counsel shall be solely responsible for supervising the administration of the Settlement set forth in this Agreement and the Escrow Account pursuant to

the terms of this Agreement and under the supervision of the Court.   The Settlement Amount and all interest accruing thereon shall be subject to the jurisdiction of the Court and will remain subject to the jurisdiction of the Court until such time as it is distributed to Authorized Claimants.   The Escrow Account shall be maintained by the Escrow Agent in a manner consistent with the provisions of this Agreement and the escrow agreement.   The Escrow Agent shall not disburse any amounts from the Escrow Account except as authorized by this Agreement and/or any orders of the Court.   Except for its obligation to make best efforts to provide accurate information with respect to the identification of Settlement Class Members and their BNA stock transactions in the SPTP from BNA's records, as provided herein, neither Defendants nor Defendants' counsel shall have any liability, obligation, responsibility for or involvement in the administration of the settlement set forth in this Agreement, the Escrow Account, the allocation of the Net Proceeds among Authorized Claimants, or the review or challenging of claims of Settlement Class Members.

2.3.5   The allocation of the Net Proceeds among Authorized Claimants shall be subject to a reasonable Plan of Allocation proposed by Plaintiffs' Counsel and approved by the Court.   Such a Plan of Allocation is a matter separate and apart from this Agreement, and any decision of the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed settlement set forth in this Agreement.

2.3.6   In the event that this Agreement is terminated pursuant to Article 11 or is not consummated for any reason, any monies in the Escrow Account, plus any accrued interest earned in the Escrow Account, less any Tax Expenses incurred in connection with this Agreement, shall be returned within fifteen (15) calendar days to BNA or to such entity as BNA shall direct in writing by notice to Plaintiffs' Counsel.

2.4     Plan of Allocation

2.4.1   Named Plaintiffs shall propose in the Notice the Plan of Allocation and shall seek approval of the Court for such Plan of Allocation at the Fairness Hearing. The proposed Plan of Allocation may be modified by Plaintiffs' Counsel without further notice to Settlement Class Members (but subject to Court approval) unless a Settlement Class Member requests individual personal notice of such modifications no later than thirty (30) calendar days prior to the Fairness Hearing.

2.4.2   All distributions to Authorized Claimants shall be from the Net Proceeds pursuant to the Plan of Allocation approved by the Court.

2.4.3   To receive a distribution from the Net Proceeds, a Settlement Class Member must be an Authorized Claimant.

2.4.4   Each Settlement Class Member who wishes to receive a distribution from the Net Proceeds must complete and submit a Proof of Claim: (i) by first-class mail, such that it is postmarked no later than the deadline set forth in the Notice, or (ii) so that it is actually received at the address on the Proof of Claim form by the deadline stated in the Notice, unless that date is extended by order of the Court.   The address to which the Proof of Claim must be mailed shall be stated in the Proof of Claim form itself and shall also be printed in the Notice.

- 9 -

2.4.5   All Proof of Claim forms must be supported by such documents and other information as called for in the Proof of Claim. The Proof of Claim for each Settlement Class Member shall include information provided by BNA stating the number of shares of BNA stock sold under the SPTP during the Class Period by the Settlement Class Member.  The Claims Administrator may submit requests to Plaintiffs' Counsel to waive *de minimus* or formal or technical defects in any Proofs of Claim.  Plaintiffs' Counsel shall have the right, but not the obligation, to waive such *de minimus* for formal or technical defects in the interest of achieving substantial justice.

2.4.6   The Proof of Claim shall be substantially in the form of Exhibit A attached hereto and shall include an individual release in favor of the Released Persons, which must be executed by each Authorized Claimant in order for such Authorized Claimant to receive a distribution in accordance with the Plan of Allocation.  Any Settlement Class Member who fails to execute the individual release referred to herein shall nevertheless be bound by the release.

2.4.7   Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator.  The validity of each Proof of Claim submitted shall initially be determined by the Claims Administrator in accordance with the Plan of Allocation approved by the Court.  Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with the Settlement Class Member in order to afford such Settlement Class Member the opportunity to remedy any curable deficiency in the Proof of Claim submitted.  If a Proof of Claim is rejected, in whole or in part, the Claims Administrator shall promptly advise the claimant in writing and notify the claimant of his or her right to contest such rejection in accordance with the procedures enumerated in paragraph 2.4.8.  Neither Named Plaintiffs or Plaintiffs' Counsel or their designees or agents, nor the Released Persons or their respective counsel, shall have any liability arising out of such determination.

2.4.8   If any claimant whose claim has been rejected in whole or in part desires to contest such rejection, the claimant must, within twenty-one (21) calendar days after the date of the Claims Administrator's mailing of the writing rejecting the claimant's claim, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, Plaintiffs' Counsel shall thereafter present the request for review to the Court for summary resolution, without any right of appeal or review. Any such claimant shall be responsible for his, her or its own costs, including, without limitation, attorneys' fees incurred in pursuing any such dispute.

2.4.9   All initial determinations as to the validity of a Proof of Claim, the amount of any claims and the calculation of the extent to which each Authorized Claimant shall participate in the Net Proceeds, the preparation and mailing of distributions to Authorized Claimants, and the distribution of the Net Proceeds shall be made by the Claims Administrator. The administration of the Net Proceeds, and decisions on all disputed questions of law and fact with respect to the validity of any Proof of Claim or regarding the rejection or amount of any claim, shall remain under the jurisdiction of the Court.  All Settlement Class Members expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

2.4.10   Unless otherwise ordered by the Court, any Settlement Class Member who fails to submit a valid and timely Proof of Claim shall be barred from receiving a distribution from the Net Proceeds.   Any Settlement Class Member who fails to submit a valid and timely Proof of Claim shall nevertheless be bound by the release and by all proceedings, orders and judgments in the Action even if he, she or it does not receive a distribution from the Net Proceeds and/or has pending, or subsequently initiates, any litigation, arbitration or other proceeding, or has any Claim against any or all of the Released Persons that is, or relates in any way to, any Released Claim.

2.4.11   In the event that the Agreement is not otherwise terminated, the Net Proceeds shall be distributed pursuant to the Plan of Allocation.   No distributions to Authorized Claimants shall be made prior to the Effective Date.

2.4.12   Prior to the distribution of the Net Proceeds, Plaintiffs' Counsel shall present for the review of the Court an accounting by the Claims Administrator of all the receipts to and disbursements from the Escrow Account and the proposed distribution of the Net Proceeds to Authorized Claimants. No such distribution shall be made in the absence of an order of the Court approving the accounting and the proposed distribution.

2.4.13   No Person shall have any Claim against Named Plaintiffs, Plaintiffs' Counsel, the Claims Administrator or any of their respective agents, or against the Released Persons and/or their respective counsel, with respect to or arising out of any distributions or lack thereof made under the Plan of Allocation, this Agreement or orders of the Court.

2.4.14   The Released Persons and/or their counsel shall have no role in, responsibility for, or liability with respect to the Plan of Allocation, the form, substance, method or manner of allocation, administration, or distribution of the Net Proceeds, any tax liability that a Settlement Class Member may incur as a result of this Agreement or as a result of any action taken pursuant to this Agreement, the administration or processing of claims, the amounts of claims or distribution of the Net Proceeds, or the maintenance of the Escrow Account as a Qualified Settlement Fund.

2.4.15   Settlement Class Members shall look solely to the Net Proceeds for settlement and satisfaction of all Released Claims.   Except as expressly provided by this Agreement, the Plan of Allocation, or an order of the Court, no Settlement Class Member shall have any interest in the Escrow Account.

2.4.16   If there are funds remaining in the Escrow Account following distribution(s) of all Court-approved payments and payments to all Authorized Claimants pursuant to the Plan of Allocation, payment of any further Notice and Administrative Expenses, Tax Expenses, and any other payments authorized by the Court, then Named Plaintiffs and Defendants may jointly make an application to Jed D. Melnick, Esq. to designate where the remaining funds will be allocated.   Defendants agree that they will not apply for any reversion of any funds to Defendants. If any such applications are denied in whole or in part, or if no Party makes any such application, all remaining funds shall be donated to non-sectarian, not-for-profit 501(c)(3) organization(s) designated by Jed D. Melnick after consideration of recommendations

- 11 -

from Named Plaintiffs and Defendants.  Defendants and Named Plaintiffs agree to pay any fees and expenses associated with Mr. Melnick's services on an equal basis.

## 3.   RETENTION OF CLAIMS ADMINISTRATOR

Named Plaintiffs shall identify and obtain Court approval to appoint the Claims Administrator to help implement this Agreement. The Claims Administrator shall administer the Settlement under the supervision of Plaintiffs' Counsel and subject to the jurisdiction of the Court.  The Claims Administrator shall perform the following functions in furtherance of this Agreement: (i) mailing or arranging for the mailing of the Notice to Settlement Class Members; (ii) answering inquiries from Settlement Class Members and/or forwarding such inquiries to Plaintiffs' Counsel or its designee(s), which shall be forwarded to counsel for BNA as appropriate; (iii) receiving and maintaining on behalf of the Court any requests for exclusion from the Settlement Class made by putative Settlement Class Members; (iv) receiving and processing Proofs of Claim; (v) mailing or causing to be mailed to Authorized Claimants distributions under this Agreement; and (vi) otherwise assisting the Court and Plaintiffs' Counsel with administration of the settlement pursuant to this Agreement.   The Released Persons shall have no responsibility with respect to the tasks enumerated or described in this Article 3.

## 4.   CAFA NOTICE ISSUANCE.

4.1   Defendants' Counsel shall prepare and serve CAFA Notices required of each Defendant as specified in 28 U.S.C. § 1715.  Not later than twenty one (21) calendar days after compliance with the CAFA Notices requirements, Defendants' Counsel shall file with the Court a declaration stating their compliance with the CAFA Notices requirement and including the date the last such notification was served.

## 5.   NOTICE TO THE SETTLEMENT CLASS

5.1   Subject to the requirements of the Preliminary Approval Order, Named Plaintiffs shall cause the Notice and Proof of Claim to be disseminated to the Settlement Class and the Summary Notice to be published.   Dissemination and publication shall be made as follows: (a) by causing the Internet Notice to be published; (b) by causing the mailing, by first-class mail, postage prepaid, of a copy of the Notice and Proof of Claim to each putative member of the Settlement Class who can be identified by Defendants through best efforts; (c) by sending the Notice and Proof of Claim through electronic mail to each putative member of the Settlement Class for whom an e-mail address has been provided by Defendants; and (d) by publishing the Summary Notice via *PR Newswire.*.

5.2   Defendant BNA, through counsel, shall provide Plaintiffs' Counsel with: (i) the name and last known mailing address, and e-mail address of each Settlement Class Member; and (ii) for each BNA stock transaction by a Settlement Class Member under the SPTP during the Class Period, the date of the transaction and the number of BNA shares involved in the transaction.  This information shall be based on reasonably available information from BNA's Human Resources and SPTP business records and shall be provided no later than ten (10) calendar days after the execution of this Agreement. Defendant BNA shall also provide this same information to the Claims Administrator by the deadline set in the Court's Preliminary Approval

- 12-

Order.  Defendant BNA shall bear the cost of providing this information from such records.
Defendant BNA will also provide telephone numbers, if available from its Human Resources
and/or SPTP business records, on an individual request basis, to Plaintiffs' Counsel upon
demonstration by Plaintiffs' Counsel of the necessity for such information in order to
communicate with such Settlement Class Members.   Otherwise the Released Persons shall have
no responsibilities with respect to the tasks enumerated or described in this Article 5.

     5.3     Plaintiffs shall bear all other costs of Notice and the Summary Notice, and their
dissemination and publication, including without limitation the reasonable costs of locating
Settling Class members.  The Notice shall be substantially in the form attached hereto as Exhibit
B.  The Summary Notice shall be substantially in the form attached hereto as Exhibit C.   Subject
to the requirements of the Preliminary Approval Order, Plaintiffs' Counsel shall submit to the
Court evidence demonstrating the adequacy of their efforts to provide notice to the putative
Settlement Class Members and publication of the Summary Notice.

## 6.    REQUESTS FOR EXCLUSION

     6.1     Putative Settlement Class Members requesting exclusion from the Settlement
Class shall mail by first-class mail or otherwise deliver a written request for exclusion to the
Claims Administrator care of the address provided in the Notice.  The request for exclusion must
contain the following information: (i) name; (ii) address; and (iii) telephone number.   Unless
otherwise ordered by the Court, any member of the Settlement Class that does not submit a timely
written exclusion request containing all of the information required by this Paragraph shall be
bound by this Agreement, even if he, she or it has pending, or subsequently initiates, litigation,
arbitration or any other proceeding, or has any Claim against any Released Person relating to any
Released Claim. Plaintiffs' Counsel and Defendants' counsel shall jointly request that the
deadline for receipt of exclusion requests shall be set twenty-one (21) calendar days prior to the
Fairness Hearing.

     6.2     The Claims Administrator shall send electronically copies of any and all exclusion
requests in PDF format (or such other format as shall be agreed) to Plaintiffs' Counsel and
Defendants' counsel as expeditiously as possible upon receipt.

     6.3     Within seven (7) calendar days after the deadline for receipt of exclusion requests,
the Claims Administrator shall report the number of shares sold by all putative Settlement Class
Members that have properly requested exclusion from the Settlement Class and the supporting
documentation for each such request for exclusion (the "Claims Administrator's Report") to
Plaintiffs' Counsel and Defendants' counsel.

     6.4     As part of the motion papers in support of final approval of the proposed
Settlement set forth in this Agreement, Plaintiffs' Counsel shall provide to Defendants a list of all
the persons who have properly requested exclusion from the Settlement Class and all of the
information provided to the Claims Administrator under Section 6.1 this Agreement by those
persons requesting exclusion, and shall certify that all exclusion requests received have been
provided to Defendants' counsel.

7.   **ATTORNEYS' FEES AND EXPENSES**

7.1     At the Fairness Hearing Plaintiffs' Counsel may request the Court to enter an Attorneys' Fees and Expenses Award to be paid out of the Escrow Account, in an amount not to exceed $600,000.00.  Defendants will not take any position on Plaintiffs' Counsel's Attorneys' Fees and Expenses Award application.  Defendants do not agree or concede that the amount that may be sought by Plaintiffs' Counsel is appropriate or reasonable, and nothing in this Agreement shall be construed otherwise.  The Parties acknowledge and agree that Defendants shall have no authority, control, or liability in connection with Plaintiffs' Counsel's attorneys' fees, costs, and expenses.  The Escrow Account shall be the sole source of attorneys' fees and expenses, and Named Plaintiffs and the Settlement Class shall have no recourse against the Released Persons for any such attorneys' fees and expenses. The Released Persons shall have no responsibility for and no liability whatsoever with respect to any payment of attorneys' fees and expenses made to Plaintiffs' Counsel or to pay any Settlement Class Member for fees or expenses in connection with the Action or this Agreement.

7.2     At the fairness hearing Plaintiffs' Counsel may request the Court to approve Case Contribution Awards to Eileen Joseph and Daniel Wishnatsky in an amount not to exceed $5,000.00 to each of them, and reimbursement of expenses to Daniel Wishnatsky in an amount not to exceed $1,139.38.  Defendants agree to not take any position on Plaintiffs' Counsel's Application for Case Contribution Awards and reimbursement of expenses to Named Plaintiffs. The Parties acknowledge and agree that Defendants shall have no authority, control, or liability in connection with the payment of Case Contribution Awards and reimbursement of expenses to Named Plaintiffs.  The Escrow Account shall be the sole source for payment of Case Contribution Awards and reimbursement of expenses to Named Plaintiffs, and Named Plaintiffs shall have no recourse against the Released Persons for these payments.  The Released Persons shall have no responsibility for and no liability whatsoever with respect to any payment of any Case Contribution Awards and reimbursement of expenses to Named Plaintiffs or to any Settlement Class Member.

7.3     On the latest of: (a) the Effective Date; or (b) the entry by the Court of an Order providing the Attorneys' Fees and Expenses Award, Plaintiffs' Counsel may direct payment of the Attorneys' Fees and Expenses Award amount from the Escrow Account, with written notice to Defendants.  If at the time of any disbursement from the Escrow Account pursuant to the Plan of Allocation there is a pending application for attorneys' fees or expenses, there shall be reserved in the Escrow Account an amount equal to the amount of the pending application, until such time as the Court rules upon such application and such ruling shall become final.

7.4     The disposition of Plaintiffs' Counsel's application for attorneys' fees and expenses is not a condition of the Agreement or to entry of the Final Judgment. The request by Plaintiffs' Counsel for attorneys' fees and expenses is to be considered by the Court separately from the Court's consideration of the question whether the Settlement is fair, reasonable, adequate and in the best interests of the Settlement Class.  Any disapproval or modification by the Court of the application for an Attorneys' Fees and Expenses Award shall not affect the enforceability of the Agreement, affect or delay either the Effective Date or the finality of the Final Judgment approving the Settlement, provide Named Plaintiffs (either on their own behalf or on behalf of the

- 14 -

Settlement Class) and/or Plaintiffs' Counsel with the right to terminate the Agreement, or impose an obligation on the Defendants to increase the compensation paid in connection with the Settlement.

**8.   RELEASES**

8.1     This Agreement covers the Claims of Named Plaintiffs, the Settlement Class, and Settlement Class Members against the Released Persons including, without limitation, the Claims asserted against the Released Persons in the Action.   Effective upon the date of entry of the Final Judgment Named Plaintiffs, the Settlement Class and Settlement Class Members, through their counsel, hereby agree to dismiss with prejudice the Complaint against the Released Persons. Effective upon the Effective Date, Named Plaintiffs, the Settlement Class and Settlement Class Members hereby fully, finally and forever release, relinquish, acquit, and discharge the Released Persons from, and shall forever be enjoined from prosecution of, all of the Released Persons for the Released Claims.

8.2     The Parties intend and agree that the Releases granted in this Article 8 shall be effective as a bar to any Released Claims.   Accordingly, Named Plaintiffs, on their own behalves and on behalf of the Settlement Class Members, hereby expressly waive, any and all rights and benefits respectively conferred upon them by the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common laws of any other State, Territory, or other jurisdiction.   Section 1542 reads in pertinent part:

"A general release does not extend to claims that the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

Named Plaintiffs, on their own behalf and on behalf of the Settlement Class and the Settlement Class Members, hereby acknowledge that the foregoing waiver of the provisions of Section 1542 of the California Civil Code and all similar provisions of the statutory or common law of any other State, Territory, or other jurisdiction, was specifically and separately bargained for and that Defendants, would not enter into this Agreement unless it included a broad release of unknown claims.

8.3     Named Plaintiffs, the Settlement Class or Settlement Class Members may hereafter discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Released Claims, but Named Plaintiffs, the Settlement Class and Settlement Class Members hereby fully, finally and forever settle and release any and all Released Claims without regard to the subsequent discovery or existence of such different or additional facts.

8.4     This Agreement covers the Defendants' Released Claims.   Effective upon the Effective Date, Defendants hereby fully, finally and forever release, relinquish, acquit and discharge the Released Plaintiff Parties from Defendants' Released Claims.

- 15-

8.5     Each Defendant absolutely and unconditionally releases and forever discharges each and every other Person who is a Defendant from any and all claims relating to the Released Claims, including any and all claims for contribution or indemnification for such claims.   The foregoing notwithstanding, nothing in this Agreement shall be construed as a release or waiver: (i) by any Defendant of any claim, right, or defense against another Defendant that is unrelated to the Action or defense of the Action; or (ii) by any Defendant of his or her rights or claims for advancement or indemnification from BNA.

8.6     The releases set forth in Paragraphs 8.1, 8.2, 8.4 and 8.5 are not intended to include the release of any rights or duties arising out of this Agreement, including the express warranties and covenants in this Agreement.

9.     **REPRESENTATIONS**

9.1     Named Plaintiffs and Defendants represent and warrant that they are authorized to execute, deliver, and perform this Agreement and that this Agreement constitutes a legal, valid, and binding obligation and that it is enforceable against each of them in accordance with its terms.

9.2     Named Plaintiffs and Defendants represent and warrant that they are not aware of any unresolved, pending, or threatened claim relating to BNA Stock by any member of the Settlement Class other than those asserted in this Action and Defendants further represent and warrant that they are not aware of any unresolved or pending claim that falls within the definition of Defendants' Released Claims.

9.3     Named Plaintiffs and Defendants represent and warrant that: (i) they have not sold, assigned, transferred or otherwise disposed of any of the claims, cross-claims, demands or rights that are the subject of this Agreement; and (ii) they shall take all necessary action to effectuate the terms of this Agreement.

9.4     Defendants represent and warrant that they have provided to Plaintiffs' counsel the most accurate information reasonably available to them with respect to Defendants' obligations as stated in Paragraph 5.2.

9.5     Defendants represent and warrant that the total number of shares of BNA Stock subject to the Settlement does not exceed the amount provided in ¶__ of the Confidential Supplemental Agreement Regarding Requests for Exclusion ("Supplemental Agreement.

10.     **COMPROMISE; NO ADMISSION OF WRONGDOING**

10.1     This Agreement constitutes a compromise of matters that are in dispute between the Parties.  Defendants are entering into this Agreement solely to eliminate the uncertainty, burden and expense of further protracted litigation. Defendants have denied and continue to deny each and every allegation of liability or wrongdoing or damage to the Settlement Class or Settlement Class Members, and believe that they acted properly and lawfully at all times, and believe that any Released Claims against them are without merit.

10.2     Whether or not the Agreement is approved by the Court and whether or not the Agreement is consummated, the facts and terms of the Settlement and this Agreement (including all exhibits hereto), as well as all negotiations, discussions, acts performed, agreements, drafts, documents signed and proceedings in connection with the settlement:

10.2.1   shall not be described as, construed as, interpreted as, or offered or received against any of the Released Persons as evidence of and/or deemed to be evidence of any presumption, concession or admission by any of the Released Persons as to: (i) the truth of any fact alleged in the Complaint; (ii) the validity of any claim that has been or could have been asserted in the Action or in any other litigation; (iii) the deficiency of any defense that has been or could have been asserted in the Action or in any other litigation; and/or (iv) any liability, negligence, fault, or wrongdoing on their part;

10.2.2   shall not be offered or received against any of the Parties in any other civil, criminal or administrative action or proceeding, or in any court or other tribunal, except in connection with any action, litigation or proceeding to enforce the terms of this Agreement, or arising out of or relating to the Preliminary Approval Order or the Final Hearing Order, or in an action or proceeding where the Releases provided in this Agreement may serve as a bar to recovery.

10.3     Notwithstanding the provisions of Section 10.2 but subject to the requirements of Section 12.5, any of the Released Persons may file, cite and/or refer to the facts and terms of the Settlement and this Agreement (including all exhibits hereto), as well as all negotiations, discussions, acts performed, agreements, drafts, documents signed and proceedings in connection with the Settlement, in any other action or proceeding that may be brought against them in any forum in order to effectuate the liability protection granted hereunder or to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release and discharge, good faith settlement, judgment bar, any theory of claim preclusion or issue preclusion or any similar defense or counterclaim.

## 11.   MODIFICATION OR TERMINATION OF AGREEMENT

11.1     This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by all Parties or their successors-in-interest.

11.2     This Agreement may not be terminated by the Parties except as provided in this Article 11 or Section 2.2.5.

11.3     Named Plaintiffs and Defendants shall each, in their separate discretion, have the right to terminate this Agreement by providing written notice of their election to do so to the other Parties hereto within thirty (30) calendar days of: (a) the Court's declining to enter the proposed Preliminary Approval Order, attached as Exhibit C in any material respect; (b) the Court's refusal to approve this Agreement in any material respect; (c) the Court's declining to enter the proposed Final Judgment and Order of Dismissal with Prejudice, attached as Exhibit D, in any material respect; or (d) the date upon which the Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

11.4     Simultaneously herewith the Parties are executing the Supplemental Agreement under which the Settlement and this Agreement may be withdrawn or terminated at the option and in the sole discretion of Defendants in the event that putative Settlement Class Members (individuals who, but for their exclusion requests, would be Settlement Class Members) who were sellers of, in the aggregate, an amount of BNA shares in excess of the Termination Threshold, as such term is defined in the Supplemental Agreement, have properly elected to exclude themselves in accordance with the requirements for requesting exclusion provided in the Notice to be disseminated pursuant to Article 5 of this Agreement.   The Supplemental Agreement shall not be filed with the Court unless the Court directs otherwise and its terms shall not be disclosed in any other manner (other than the statements herein and in the Notice). The Parties will keep the terms of the Supplemental Agreement confidential.

11.5     With respect to exclusion requests from the Settlement Class by individuals, who but for their exclusion requests would be Settlement Class Members, Defendants shall have up to five (5) calendar days after receipt of the Claims Administrator's Report referenced in paragraph 6.3 of this Agreement regarding exclusion requests to give notice in writing to Plaintiffs' Counsel that BNA elects to exercise its option to terminate this Agreement.   If Defendants so elect to terminate this Agreement, Plaintiffs' Counsel may, within seven (7) calendar days of receipt of such notice of termination (or such longer period as shall be agreed upon in writing between Plaintiffs' Counsel and counsel for Defendants), review the validity of any exclusion request and may attempt to cause retraction of any exclusion request.   If, within the seven (7) day period (or later if agreed upon in writing), Plaintiffs' Counsel succeeds in causing the filing of binding retractions of a sufficient number of exclusion requests such that the Termination Threshold would not be triggered as specified in the Supplemental Agreement, then any termination of this Agreement by Defendants shall automatically be deemed to be a nullity. To retract an exclusion request, a Settlement Class Member must file a written notice with the Court stating without reservation or condition the Settlement Class Member's desire to retract his, her or its exclusion request and the Settlement Class Member's desire to be bound by any judgment or settlement in the Action.

11.6     If the Court, for any reason, upon review of objections to the Plan of Allocation, affords Settlement Class Members another opportunity to file requests for exclusion after the deadline set forth herein, then notwithstanding any other terms or provisions of this Agreement, following the close of such renewed period to file requests for exclusion, Defendants shall have the right pursuant to this Article 11 to withdraw from and terminate this Agreement if this new opportunity to file requests for exclusions causes the total number of exclusions to exceed the Termination Threshold.

11.7     If Defendants or Named Plaintiffs exercise their respective rights of termination for any of the reasons in this Article 11, then (a) this Agreement shall be terminated without prejudice, and none of its terms shall be effective or enforceable; (b) the Parties shall revert to their litigation positions as of the day immediately before the Execution Date; (c) any judgment(s) or order(s) entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, nunc pro tunc, and (d) Named Plaintiffs shall return to BNA and/or to such entity as BNA may direct by written notice to Plaintiffs' Counsel, the Settlement Amount plus any accrued

- 18-

interest earned in the Escrow Account, less any Tax Expenses, within fifteen (15) calendar days of such termination.

     11.8    If any of the Parties hereto engages in a material breach of the terms hereof, any other Party may terminate this Agreement on notice to the breaching Party or seek enforcement of the Agreement pursuant to Section 12.18.

     11.9    No findings or conclusions by the Court pursuant to Section 21D(c)(l) of the Exchange Act, 15 U.S.C. § 78u-4(c)(l), shall operate to modify, terminate, or cancel this Agreement or affect the finality of the Final Judgment or any other orders entered by the Court giving effect or pursuant to this Agreement, nor shall any such findings or conclusions affect or delay the Effective Date.

## 12.    MISCELLANEOUS PROVISIONS

    12.1    Choice of Law

     Except to the extent federal law applies, this Agreement and ancillary agreements shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia, without giving effect to the conflict of laws or choice of law provisions thereof.

    12.2    Retention of Jurisdiction

     The administration and consummation of this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreement.

    12.3    Waiver of Breach

     The provisions of this Agreement may be waived only by an instrument in writing executed by the waiving Party.   The waiver by any Party of any breach of this Agreement shall not be deemed to be or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

    12.4    Headings; Words; Reference to Person

     The headings herein are included for the purpose of convenience only and are not meant to have legal effect. Words used herein, regardless of the number and gender specifically used, shall be deemed and construed to include any other number, singular or plural, and any other gender, masculine, feminine or neuter, as the context indicates is appropriate.   References to a Person are also the Person's permitted successors and assigns.

    12.5    Confidentiality

    12.5.1 To the extent permitted by law, all agreements made and orders entered during the course of this Action and in the course of *Knight* relating to confidentiality of information shall apply to and survive this Agreement.   The Parties further agree that unless ordered by the Court, they will not publicize, disseminate, refer to or otherwise distribute to any

third party any information regarding the negotiations between the Parties or any confidential information or documents that they have obtained from the other side in connection with this Action or *Knight*, whether the confidential information was obtained through document or other written discovery, through depositions, or otherwise.

12.5.2  Plaintiffs' Counsel and Named Plaintiffs agree not to disseminate the Agreement or divulge its terms other than:  (a) in filings in this Action to finalize approval of the Settlement or in connection with a related appeal or action arising under the Agreement; (b) in connection with the Notice requirements; (c) in response to a subpoena or court order; (d) in confidential communications between Named Plaintiffs and their accountants or financial advisors; and (e) in communications among Plaintiffs' Counsel, the Claims Administrator, Escrow Agent and other service providers in order to implement this Agreement.   The Notice will inform Settlement Class Members that they must not disseminate the Agreement or to divulge its terms other than as permitted above.

12.5.3  Nothing in this Section shall be construed as limiting Plaintiffs' Counsel's ability to communicate with Settlement Class Members about the Agreement, or to state that the Action has been settled without further comment.

12.5.4  No counsel or Party to this Action shall make any communication to the media regarding the Action, the Settlement, the Agreement unless the timing and content of such communications are mutually agreed upon in advance by the Parties' respective counsels.

12.6     Notices

All notices or other communications required or permitted under this Agreement (other than Notice to the Settlement Class, or other notices given at the direction of the Court) shall be in writing and delivered by any method providing proof of delivery, including facsimile. Any notice shall be deemed to have been given on the date of delivery. Notices shall be delivered to the Parties at the following addresses unless and until a different address has been designated by a Party:

IF TO NAMED PLAINTIFFS:

William A. Sherman
Dinsmore & Shohl LLP
801 Pennsylvania Ave. NW
Suite 610
Washington, DC 20004
Fax: (202) 371-9141

M. Gabrielle Hils
Dinsmore & Shohl LLP
255 East Fifth Street
Suite 1900
Cincinnati, OH 45202
Fax: (513) 977-8141

- 20-

IF TO DEFENDANTS:

Paul Ondrasik, Jr.
Morgan D. Hodgson
Jeffrey E. McFadden
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., NW
Washington, DC 20036
Fax: (202) 429-3902

Any Party may change the address at which he or she is to receive notice by written notice delivered to the other Parties in the manner described above.

12.7   Integration

This Agreement and the Supplemental Agreement referenced in Section 11.4 of this Agreement constitute the entire agreement of the Parties with respect to this Action, and supersedes any and all prior statements, representations, promises or other agreements, written or oral, with respect to the subject matter of this Agreement.   In entering into this Agreement, no Party has relied upon any representation, warranty or inducement not set forth expressly herein.

12.8   Survival

All agreements made and orders entered during the course of the Action relating to the confidentiality of information shall survive this Agreement.   All representations, warranties and covenants set forth in this Agreement shall be deemed continuing and shall survive the Effective Date but shall not survive the termination or expiration of this Agreement.

12.9   Binding Effect

This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, successors and assigns, and upon any corporation, limited liability partnership, government or any political subdivision or agency thereof, or other entity into or with which a Party hereto may merge, combine or consolidate.

12.10   Incorporation by Reference

The Exhibits to be attached hereto shall be incorporated by reference as though fully set forth herein.   In the event that a conflict or inconsistency exists between the terms of this Agreement and the terms of any exhibit to be attached hereto, the terms of this Agreement shall prevail.

- 21 -

12.11   Rule of Construction

The Parties have jointly drafted this Agreement, and, accordingly, any presumption or other rule of construction that any ambiguities be resolved against the drafting Party shall not be employed in the interpretation of this Agreement.

12.12   Computing Time Periods

Unless otherwise specified, in computing any period of time prescribed or allowed by this Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a legal holiday, in which event the period shall run until the end of the next day that is not one of the aforementioned days. As used in this Paragraph, "legal holiday" includes New Year's Day, the observance of the Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day appointed as a federal holiday.

12.13   Tax Consequences

No opinion or advice concerning the tax consequences of the proposed settlement to individual Settlement Class Members is being given or will be given by the Parties or their Counsel; nor is any representation or warranty in this regard made by virtue of this Agreement. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

12.14   Document Destruction and Certification

Except for attorney notes, and those documents and court filings that are publicly available, Plaintiffs' Counsel agree to destroy all documents within their custody or control that they obtained from Defendants that are designated as confidential in this Action, or that they obtained from the defendants or through subpoenas in *Knight* and that were designated as confidential, within sixty (60) calendar days after the Effective Date, and to certify such destruction by notice to Defendants.   The requirement of destruction includes all electronically stored confidential information maintained in reasonably accessible sources as that term is used in Fed. R. Civ. P. 26(b)(2)(B).   Nothing in this Agreement shall be construed as requiring the destruction of electronically stored confidential information that is stored in backup or disaster recovery systems that would not be deemed reasonably accessible.

12.15   Counterparts

This Agreement may be executed in counterparts, including by signature transmitted by facsimile or email.   Each counterpart when so executed shall be deemed to be an original, and all such counterparts together shall constitute the same instrument.   A complete set of original executed counterparts shall be filed with the Court.

- 22 -

12.16    Preliminary Approval of Agreement

Subject to the Court's availability and approval, the Parties and their respective counsel shall use their best efforts to submit the necessary papers for preliminary approval of this Agreement and incorporated Exhibits A-D, on or before February 28, 2014.

12.17    Authority To Execute Agreement

The undersigned signatories represent that they have authority to execute this Agreement on behalf of their clients.

12.18    Resolution of Disputes

The Parties agree that if any disputes between them arise out of the negotiation of this Agreement or the Agreement itself, such disputes shall be resolved by Jed D. Melnick, Esq., first by means of mediation and, if unsuccessful, then by arbitration with Mr. Melnick as sole arbitrator, to the full extent provided by law. If Mr. Melnick is not available, the Parties will use their best efforts to agree upon a replacement arbitrator. Defendants and Named Plaintiffs agree to pay for any fees and costs charged by Mr. Melnick or a replacement arbitrator on an equal basis. If the Parties are unable to agree on a replacement arbitrator, they will seek relief from the Court.

IN WITNESS WHEREOF, this Agreement has been executed by the Parties by their duly authorized representatives signing below.

FOR NAMED PLAINTIFFS

DATED: March 19, 2014

William A. Sherman, II
Dinsmore & Shohl LLP
801 Pennsylvania Ave. NW
Suite 610
Washington, DC 20004
william.sherman@dinsmore.com

M. Gabrielle Hils
Dinsmore & Shohl LLP
255 East Fifth Street
Suite 1900
Cincinnati, OH 45202
gabrielle.hils@dinsmore.com

Counsel for Plaintiffs

FOR DEFENDANTS:

- 23-

DATED: March 19, 2014

Paul J. Ondrasik, Jr
Morgan D. Hodgson
Jeffrey E. McFadden
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Phone: 202-429-3000
Fax: 202-429-3902
pondrasik@steptoe.com
mhodgson@steptoe.com
jmcfadden@steptoe.com

Counsel for Defendants

EXHIBITS TO THE STIPULATION AND AGREEMENT OF SETTLEMENT

Exhibit A:     Proof of Claim

Exhibit B:     Notice of Settlement of Class Action

Exhibit C:     Summary Notice

Exhibit D:     Preliminary Approval Order

Exhibit E:     Final Judgment and Order of Dismissal with Prejudice

- 24-